May it please the Court, good morning, Jeffrey Dickerson from Reno, Nevada, appearing on behalf of the appellant, Mr. Higley. Mr. Higley worked at Rick's Flooring, installing carpets for many years, two different occasions, two different stints there, and he's on appeal from a decision by Judge Reed, finding that there was no genuine issue of material fact remaining to be tried on the question of disability. And in this case, we're relying upon the actual disability as opposed to record of or regarded as. The District Court's opinion, the Learned District Court Senior Judge, found that there was some indication of a progressive ongoing condition underlying this alleged disability that didn't really get so bad as to warrant medical attention until 2006, which was sometime after he'd been employed there. And of course, we're focusing on the time of the employment. Our contention on appeal is that the District Court got it right up to the point of finding that it was a progressive disease in nature with respect to his back, and that the knee, although he didn't mention it, the knee, I think he had to have implicitly mentioned it because he was referring to a physical condition that progressively got worse. How do you get around the fact that he indicated that the chiropractic treatment that he received managed the condition, and he was able to work? I mean, under Sutton, which remains the applicable law, why isn't that a difficulty for you? We are under Sutton in this case, Your Honor, and unlike the eyeglasses that the driver wore for UPS in Sutton, where it was constantly cured, constantly under control in this case, the chiropractic treatments by the plaintiff's own testimony were palliative in nature, that he would have to go and get the adjustments. It would take a couple of weeks for them to kick in, if you will, and then he would have to go back after the condition became to the record and from the plaintiff's testimony that this is the exact type of person that Congress had in mind. This is the epitome of the disabled person who we want to protect because he wants to work. He lost his disability application for insurance way back when, and he had no other way to make money except to do installing carpets, and he worked through the pain through all these years doing this, including at Rick's, and he was asked at his deposition, what accommodations did you ask for? What accommodations did you need? And he said, quote, just help. Just help. All he needed was a helper to be there on time, qualified to do the job, to help him lift these carpets off the truck and into the house and up the stairs and so forth, and this was not provided to him despite repeated complaints by him that he was in pain because he had to do it himself, et cetera. Are we, it seems to me that there's no evidence in the record regarding walking and bending. There's no argument on appeal regarding being pain-free, at least in the briefs as I've read them. So we're really looking at sitting and standing, aren't we? Well, you bring up a good point with pain-free, Your Honor, but yes, in the briefs and in the record below, the contentions, the evidence in the record that he talked about, he was specifically asked at his deposition, what... Well, that's not my answer. I mean, I didn't see any evidence about walking or bending, and I didn't see any argument in your brief about being pain-free. So we're really looking at sitting and standing as to this particular case, correct? And lifting. So I've got to find substantial evidence after the impairment is corrected or mitigated by medication or other measures, right? Correct. Must be more than a mere difference in an ability to perform a particular act. That's what Sutton says. As compared to the average person in the population. And so we don't have the benefit of the new amendments to the ADA in this case. Well, I guess my worry is, what evidence do I have that he was impaired when he was working at Rick's? The evidence is from the plaintiff's testimony with respect to how he had to, he could not sit or stand for extended periods of time. He had to...        And then he had to sit for a long time. Did he ever tell Rick's about this? Yes, he did. Well, I understood from the record he didn't ever tell Rick's about that. Well, of course, that's what Rick says. That's what Mr. Corelli says. Where do I find in the record that he did? Well, in our excerpts, I think it's pages 59 through 61, just discuss it, and you can also look at the excerpts that were filed by, well, this is in our excerpts, too. 59 to 61 is the long version of the deposition, and if you want the short form of the deposition, the four square, that's 131. As I read 131 and... 131, 132, 134, 35, 39, 40, and 41 all speak to the question of what did you tell Rick? What did you tell the managers? Okay. As I understand the evidence, he didn't have any problem lifting carpets unless the carpet was large and thick. And that was most of the time because the evidence is... And then I also understand from the evidence it always takes two people to install large and thick. Therefore... Yes. I didn't see how it wasn't any different than the average. If everybody takes installing carpets large and thick and it takes two people to do it, then it seems like he's average in that regard. Well, I think apart from the ordinary, he needed more than two people. He talks about a couple of instances as examples where they needed a third person. It was a 30-foot length of carpet. And he and his sidekick that day ended up having to go and lift this out of the truck, get it into this custom home. They'd already put the railing up on the stairs up to the second floor, so they had to squeeze it in half and get it up the stairs. That's an example of where at 1 o'clock that afternoon Rick finally sent somebody out. They're already done. They're upstairs with the carpet. Let me ask you another question. He says kicking in the stairs hurts his back. However, I also understood from his own testimony he could do it and he continued to kick in the stairs. That's true. He could only do it with one leg, and that hurt his back. So I guess my biggest problem is I'm having trouble with the evidence as to what exactly the evidence shows, trying to decide if the judge was correct or not, that had anything to do before getting out of Rick's employ. And then when I look at the evidence, I'm having real trouble finding out why it is any different than the normal person or average person. The nature and severity of the impairment doesn't seem to be different from what is there. And what's my standard review? Substantial evidence. So I'm having a tough time seeing why I should overturn. Well, your standard review is de novo, I believe. And so you're looking at this anew, apart from what the judge did, although it's pertinent to understand how the district judge derived its conclusion. But, Judge Smith, I think that some of the discussion in the colloquy we just had has been focusing upon how it's impacting his ability to do his job as opposed to stepping back, because we're not claiming that the disability is that he's limited, substantially limited his ability to do work or do jobs of a particular class. We're claiming that he's substantially limited in his ability to sit for extended periods of time, to stand for an extended period of time, and lifting. And his own testimony that I've just given you the places where you can look, he testifies as to what those limitations are. Under McElinden and Wellington, the two cases that we've cited, those are two cases, one of which was from Judge Reed's court on appeal, where this Court said that the plaintiff's testimony is sufficient to establish the substantially limiting issue. And in this case, we have that evidence before the Court. And with all due respect to Judge Reed, who I don't know, I know Judge Hugg knows, Judge Reed, maybe you other two do, too, but he seldom errors. And I think on this one he did. I think that there is a question of fact for a jury to make the determination as to whether or not there's an actual disability. And now with respect to the issues that he did not address, whether he's a qualifying individual and so forth, I think we've canvassed that in the opening brief and in the reply. And I'd like to reserve the 15 seconds I have for rebuttal. Thank you, Your Honors.  Mr. Crosby. May it please the Court, Nick Crosby with the law firm of Markeen Arbach on behalf of Appley Ricks Floor Covering, Incorporated. Thank you, Your Honors. I think the main focus here for this Court today is exactly what Your Honor said. Where is the substantial evidence? Where is any evidence that Mr. Higley was disabled as defined under the ADA or as under any definition for that purpose at the relevant time periods? The Honorable Judge Reed acknowledged that Mr. Higley had stated he suffered from back problems and knee problems. He reviewed the records submitted by Mr. Higley about his alleged disability and properly concluded that the evidence did not substantiate a disability at the time that Mr. Higley was employed by Ricks Floor Covering. Instead, what Judge Reed acknowledged was that the records show he may have had some injury in 2006, almost 10 months after he had left the employment of Ricks Floor Covering on his own accord. What we have here is a person who did not like to work and did not want to do the custom jobs, as he called it, despite the fact he called himself the best installer at Ricks Floor Covering. And I think my client acknowledged that he was a very good installer. In this case, we're not concerned with whether he can work or not or whether it hurts when he works, but we're concerned with the first element, that is, is he disabled in a normal life function? And why was he disabled or not disabled in a normal life function? He was not disabled in a normal life function. And why not? Standing and sitting would be a normal life function, would they not? Certainly it would, Your Honor. But the evidence presented at the lower court did not demonstrate that Mr. Higley could not sit or stand, other than his own statements two years after the fact that he could not sit or stand. Interestingly, in his opening brief, Mr. Higley states that he's able to work on his hands and knees and essentially, near as I can tell, crawl around the entire day without ever sitting or standing for some extended period of time. It somewhat defies common sense, at least in somewhat of an opinion, that Mr. Higley is unable to sit or stand for an extended period of time. And we have no evidence that Mr. Higley could not do that. An extended period of time, was that ever identified as what an extended period of time is? No, Your Honor. Your Honor, Mr. Higley was very vague in his description of his disabilities. I pressed him significantly during the course of his deposition on numerous areas, one of which including his disability. I could glean from the deposition, in addition to his general statement he couldn't sit or stand, it also affected his ability to ski. I don't know if this occurred from a 1982 drunk driving accident or a 1995 or a 1992 injury on another car installation, not with my employer. He was never specific when any of this occurred. And, in fact, Judge Reed acknowledged that Mr. Higley's deposition testimony could not pinpoint when he actually became disabled or if he was disabled when that alleged disability substantially impaired his major life activity. He was all over the board with respect to when he actually could have been disabled and when, in fact, any alleged disability substantially impaired a major life activity. And, furthermore, this case was prior to the 2009 or 2008 amendment, which became effective in 2009, thereby abrogating such. It seems to me that the key is what is an extended period of time, because standing and sitting alone is a major life function, isn't it? Yes, Your Honor. All right. So was there discussion at all about what extended period of time meant? No, Your Honor. Not that I can recall a specific discussion as to getting down to minutes or half hour, hour, day. Mr. Higley testified in general terms about his alleged disability and how it affected his life without providing any specifics, without providing any medical records indicating that he's prevented from doing certain activities other than a July 2006, I believe it was, chiropractic statement indicating he shouldn't go back to laying carpet, which he had already received an apparent 100% disability in 1993 for a disability for laying carpet. But what the focus here as well, this Court, I'd like to remind is that this was a pre-amendment to the ADA and Mr. Higley did testify that his chiropractic treatments would ameliorate his pain. And I think that if, as cited in my brief, I believe I block quoted that deposition testimony, he said it would take a couple of days, sometimes a week, to kick in and then he'd be able to work. But I don't see any deposition testimony to have to go back on a weekly basis and there's certainly no evidence in the records to suggest that Mr. Higley saw a chiropractor on a weekly basis or a biweekly basis for the period of time in which is relevant to this current proceeding. The District Court properly determined that Mr. Higley was not disabled as defined under the ADA and the record is void of any supporting evidence to demonstrate a disability under the Americans with Disabilities Act. Thank you, Your Honors, unless there's other questions. I don't think so. Thank you. Thank you, Your Honor. Mr. Dickerson. Judge, I would refer you to excerpts of record 141 when you get the opportunity to take a look at that. And on the right side of that four square of the deposition up at the top, there's discussion of 2000 as being the time frame that he identified as when this became a worse problem. And as Judge Reed indicated, in 2000s. What became a worse problem? The back problem. It started creating problems for him in terms of pain. We're not really concerned here with whether he can work or not. Correct. Or in his normal job or not. We're concerned with whether he is disabled in a normal life function. Now, sitting and standing are, but there's no indication he can't sit or stand. Well, there's testimony from the plaintiff that he can't do that. That's in the series of documents that I gave you. He can't sit or stand? No, he can sit, he can stand, but he cannot do either for extended periods of time. What is an extended period of time? That's not in the record. Well, how do we know, then, that he is disabled or not? He can't sit or stand? He can't for an extended period. Well, a normal person can only sit and stand for so long, so I don't see how you meet the first requirement of the Act. Well, I fall back on its summary judgment, considering the evidence in the light most favorable, and considering the plaintiff's testimony, which is allowed in the light most favorable to the plaintiff, it should be taken in his favor. Thank you, Your Honors. All right. Thank you, counsel, both of you. The matter just argued will be submitted.
judges: Hug, Rymer, Smith N. R.